IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 18-10104-EFM-1

MARCO ANTONIO CARDENAS-
RODRIGUEZ,

    *Defendant.*

**MEMORANDUM AND ORDER**

The Indictment in this case charges Defendant Marco Antonio Cardenas-Rodriguez with unlawful reentry in violation of 8 U.S.C. § 1326(a) and (b). Defendant seeks dismissal of the Indictment on the basis that his prior removal from the United States was invalid because the immigration court lacked subject matter jurisdiction to enter the underlying removal order. Because the Court concludes that Defendant's prior removal was valid, the Court denies Defendant's motion.

# I. Factual and Procedural Background[1]

Defendant was served a Notice to Appear (the "Notice") on December 5, 2002, while being held at the Service Processing Center in El Paso, Texas. The Notice was prepared using Form I-862 (Rev. 3/22/99) and alleged that Defendant was not a United States citizen; that he was a citizen of Mexico; that he arrived in the United States at or near Calexico, California, on or about September 1, 2002; and that he was not then admitted or paroled after inspection by an immigration officer. The Notice charged that Defendant was subject to removal from the United States pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). The Notice ordered Defendant to appear before an immigration judge in El Paso, Texas, "on a date to be set at a time to be set" to show why he should not be removed from the United States.

The Notice included a section titled "Request for Prompt Hearing," signed by Defendant, requesting an immediate hearing and waiving his right to a 10-day period before appearing before an immigration judge. In addition, the Notice contained a certificate of service that was signed by Defendant and the immigration enforcement agent. The certificate of service stated that that the Notice was personally served on Defendant on December 5, 2002, and that Defendant was provided oral notice in Spanish of the time and place of his or her hearing and of the consequences of failure to appear.

On December 10, an attorney entered his appearance on Defendant's behalf, and Defendant signed a consent form for disclosure of information to that attorney. Six days later, Defendant's

---

[1] Neither party has requested a hearing in connection with the motion to dismiss. Both have attached exhibits to their briefs, the authenticity of which does not appear in dispute. For the purposes of the motion, the Court accepts as uncontested the facts shown by the parties' exhibits.

attorney advised the Clerk of the Court that Defendant was admitting all the allegations in the charging document and conceding the charge of removal. That same day, the Clerk of the Court issued a Notice of Hearing in Removal Proceedings to Defendant's attorney stating that Defendant's hearing was scheduled for December 20 at 9:00 a.m.

On December 20, 2002, with the Defendant present and represented by counsel, the immigration judge entered the final order of removal for Defendant. The Warrant of Removal/Deportation was entered and Defendant's actual removal occurred on that same date.

Defendant has been deported from the United States several times since initial removal in December 2002. Defendant reentered the United States in February 2003 and was convicted in New Mexico for trafficking heroin and sentenced to 9 years (suspended). On June 8, 2004, he was served a notice of intent to remove him, which he did not contest. He admitted that he was deportable and not eligible for any relief from removal, waived the period of execution of the "Final Removal Order," and advised that he wished to be removed to Mexico. An order for removal issued on June 8, 2004, and was personally served on Defendant that same day. The warrant for removal issued and was executed on June 9, 2004.

On December 4, 2008, Defendant attempted to reenter the United States and was caught at the border, resulting in his immediate removal. He was again caught in the United States in June 2009 and convicted in June 2010 for illegal reentry in the United States District Court for the District of New Mexico. Defendant was removed in June 2011.

Defendant was caught yet again in the United States in March 2016, which resulted in a March 2017 conviction by plea for illegal reentry in the United States District Court for the District of New Mexico. He was notified of the prior removal and deported again on March 28, 2017.

At some point on or before July 27, 2018, Defendant reentered the United States for the sixth time. Defendant is now charged with reentry of a removed alien in violation of 8 U.S.C. § 1326(a) and (b). Specifically, the Indictment charges that Defendant is a citizen of Mexico and not a citizen and national of the United States, that he was previously deported, and that he was found in the United States after having voluntarily re-entered without the appropriate permission. Defendant subsequently filed a Motion to Dismiss Indictment (Doc. 11) which is presently before the Court.

## II. Analysis

To convict Defendant on the charge of reentry of a removed alien in violation of 8 U.S.C. § 1326(a) and (b), the Government must prove that (1) the defendant was removed from the United States while an order of removal is outstanding; and (2) the defendant subsequently "entered, attempted to enter, or is at any time found in, the United States."[2] Generally, the Government establishes the first element by producing evidence that the defendant was deported while a deportation order was outstanding against him.[3] In response, a defendant may argue that the deportation order itself was unlawful.[4] This defense is specifically recognized in subsection (d) of § 1326, which allows a defendant to collaterally attack an underlying deportation order. Under this subsection, an alien may not challenge the validity of a prior deportation order unless the alien demonstrates that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was

---

[2] *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010) (alterations omitted) (quoting 8 U.S.C. § 1326(a)).

[3] *Id.*

[4] *Id.*

issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."[5]

Here, Defendant challenges the validity of his prior removals as a defense to the § 1326(a) and (b) charge in the Indictment. In short, Defendant argues that the immigration court was never vested with subject matter jurisdiction because the 2002 Notice lacked a specific date and time for the initial removal hearing as required by the Supreme Court's recent decision in *Pereira v. Sessions*.[6] Accordingly, Defendant argues that his due process rights were violated when he was deported from the United States. In response, the Government argues that *Pereira* does not apply, because unlike the alien in *Pereira*, Defendant received notice of the date and time of his hearing and actually appeared at that hearing represented by counsel.

### A. Summary of *Pereira v. Sessions*

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, nonpermanent residents who are subject to removal proceedings may be eligible for cancellation of removal if, among other things, they have "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [an] application" for cancellation.[7] But, under the "stop-time rule," the period of continuous presence is "deemed to end . . . when the alien is served a notice to appear under section 1229(a)."[8] Section 1229(a), in turn, states that the Government must serve the alien with a written notice to appear specifying,

---

[5] 8 U.S.C. § 1326(d).

[6] 138 S. Ct. 2105 (2018).

[7] 8 U.S.C. § 1229b(b)(1)(A).

[8] *Id*. § 1229b(d)(1)(A).

among other things, "[t]he time and place at which the [removal] proceedings will be held."[9] In recent years, DHS typically issued notices to appear that failed to specify the time, place, or date of initial removal hearings whenever the agency deemed it impracticable to include this information.[10] This is the case with the notice to appear received by the defendant in *Pereira*.[11]

Pereira is a citizen of Brazil who arrived in the United States in 2000 and stayed after his visa expired.[12] After he was arrested in 2006 for operating a vehicle under the influence of alcohol, DHS served him with a notice to appear that did not specify the time or date of his initial removal proceeding.[13] A year later, the immigration court mailed him a more specific notice setting forth the time and date of the hearing, but the notice was sent to the wrong address.[14] As a result, Pereira failed to appear and the immigration court ordered him removed "in absentia."[15] In 2013, Pereira was arrested again and the immigration court reopened the removal proceedings.[16] Pereira applied for cancellation of removal, arguing that the stop-time rule was not triggered by DHS's initial 2006 notice because it failed to specify the time and date of his removal hearing.[17] The immigration court denied Pereira's application and the Board of Immigration Appeals ("BIA") agreed, finding that the 2006 notice triggered the stop-time rule even though it failed to specify the time and date

---

[9] *Id*. § 1229(a)(1)(G)(i).

[10] *Pereira*, 138 S. Ct. at 2111.

[11] *Id*. at 2112.

[12] *Id*.

[13] *Id*.

[14] *Id*.

[15] *Id*.

[16] *Id*.

[17] *Id*.

of the removal hearing.[18] The First Circuit denied Pereira's petition for review of the BIA's order.[19]

The Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule."[20] The Supreme Court relied on the statutory language of the stop-time rule, which states that the alien's physical presence ends "when the alien is served a notice to appear under section 1229(a)."[21] Because § 1229(a) specifies that the notice to appear is a "[w]ritten notice" that specifies "the time and place at which the [removal] proceedings will be held," the Government must serve a notice that specifies the time and place of the removal proceedings.[22] The Supreme Court also observed that § 1229(a)(2), which allows for a change or postponement of the proceedings to a new time and place, presumes that the Government has already served a notice that specifies the time and place as required by § 1229(a).[23] Otherwise, there would be no time or place to change or postpone.[24] The Supreme Court also focused on the alien's need for a meaningful opportunity to obtain counsel and to prepare and participate in the hearing.[25] Pereira never received notice of the hearing and therefore

---

[18] *Id*. at 2112-13.

[19] *Id*.

[20] *Id*. at 2113-14.

[21] *Id*. at 2114 (quoting 8 U.S.C. § 1229b(d)(1)).

[22] *Id*.

[23] *Id*.

[24] *Id*.

[25] *Id*. at 2114-15.

he did not have this opportunity.[26] The Supreme Court reversed the denial of Pereira's appeal and remanded the case for further proceedings consistent with its opinion.[27]

**B.      Validity of the 2002 Removal**

It is undisputed that Defendant's Notice was deficient under *Pereira* because it did not state the date and time of Defendant's initial removal proceeding. Defendant argues that this deficiency divested the immigration of subject matter jurisdiction thereby rendering his removal proceedings null and void. In support of this argument, Defendant relies on the regulations promulgated by the Attorney General interpreting the INA. Specifically, 8 C.F.R. § 1003.14(a) states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the [i]mmigration [c]ourt by the Service." The regulations define a "charging document" as "the written instrument which initiates a proceeding before an [i]mmigration [j]udge. . . . these documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearings by Alien."[28] Accordingly, Defendant argues that because his Notice was defective under *Pereira*, a valid charging document was never filed in the immigration court and thus it did not have subject matter jurisdiction.[29]

---

[26] *Id*.

[27] *Id*. at 2120.

[28] 8 C.F.R. § 1003.13.

[29] Defendant relies on several district court decisions that have addressed this issue post-*Pereira*. These courts have concluded that an immigration judge lacks subject matter jurisdiction if the Notice to Appear does not contain the date and time of the removal hearing—thereby rendering the removal proceeding null and void. *See, e.g.*, *United States v. Pedroza-Rocha*, 2018 WL 6629649, at *5 (W.D. Tex. 2018); *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164, 1166 (E.D. Wash. 2018). The Court declines to follow these decisions, as explained more fully in this Order.

The Court disagrees with Defendant that *Pereira* is applicable to this matter. Defendant seeks to expand *Pereira*'s holding to encompass all notices to appear in all types of removal proceedings, not just those concerning the stop-time rule. He also seeks to extend its holding to circumstances where the alien later receives the missing information and actually attends the hearing. This expansive application conflicts with the plain language of the Supreme Court's decision, which explicitly stated that the question before it was a "narrow" one.[30] Indeed, when discussing the limitations of the notice to appear under § 1229(a), the Supreme Court limited its discussion to the context of the stop-time rule.[31] The word "jurisdiction" does not appear anywhere in the opinion. The Court presumes that if the Supreme Court intended for its holding to address the subject matter jurisdiction of the immigration courts as Defendant suggests, it would not have described the dispositive issue as a "narrow" one.

This Court's conclusion is supported by the BIA's precedential decision in the *Matter of Bermudez-Cota* and recent decisions from the Sixth and Ninth Circuits.[32] The respondent in *Bermudez-Cota* was a native and citizen of Mexico, who was personally served a notice to appear that did not state the date and time of the removal hearing.[33] The immigration court later mailed him a notice of hearing indicating when and where the hearing was to take place. The respondent

---

[30] *See* 138 S. Ct. at 2113 ("[T]he dispositive question in this case is much narrower, but no less vital: Does a 'notice to appear' that does not specify the 'time and place at which the proceedings will be held,' as required by § 1229(a)(1)(G)(i), trigger the stop-time rule?").

[31] *See United States v. Chavez*, 2018 WL 6079513, at *7 (D. Kan. 2018) (citing *Pereira*, 138 S. Ct. at 2112, 2114, 2117).

[32] *See In the Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (B.I.A. 2018); *Hernandez-Perez v. Whitaker*, 911 F.3d 305 (6th Cir. 2018); *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019).

[33] *Bermudez-Cota*, 27 I. & N. at 441.

appeared at this hearing and others.[34] After *Pereira*, the respondent filed a motion to terminate arguing that his proceedings should be terminated because the notice to appear did not comply with § 1229(a)(1) and thus jurisdiction never vested with the immigration judge under 8 C.F.R. § 1003.14.[35] The BIA denied the respondent's motion, holding that "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an [i]mmigration [j]udge with jurisdiction over the removal proceedings and meets the requirements of [§ 1229(a) of the INA], so long as a notice of hearing specifying this information is later sent to the alien."[36]

First, the BIA found that *Pereira* did not affect when or how jurisdiction was conferred on the immigration court, distinguishing *Pereira* on the basis that it involved a cancellation of removal where the stop-time rule was at issue.[37] The BIA noted that in *Pereira* the Supreme Court described the issue before it as "narrow" and reasoned that the Court would not have described the issue as such if it intended for its holding to affect the immigration court's jurisdiction.[38] Lastly, the BIA emphasized that the Supreme Court did not invalidate the alien's underlying removal proceedings or even suggest that they should be terminated as a result of the deficient notice.[39] Instead, the Supreme Court remanded the matter for "further proceedings."[40]

---

[34] *Id.*

[35] *Id.* at 443.

[36] *Id.* at 447.

[37] *Id.* at 443.

[38] *Id.*

[39] *Id.* at 443-44.

[40] *Id.* at 443 (quoting *Pereira*, 138 S. Ct. at 2120).

Second, the BIA addressed the regulations, finding that it was not required to terminate proceedings pursuant to 8 C.F.R. § 1003.14. As noted above, 8 C.F.R. § 1003.14 states that "[j]urisdiction vests, and proceedings before an [i]mmigration [j]udge commence, when a charging document is filed with the [i]mmigration [c]ourt."[41] According to the BIA, this regulation does not specify what information must be contained in a "charging document" at the time it is filed with an immigration court.[42] Nor does it require that the charging document specify the time and date of the initial removal hearing before jurisdiction vests.[43] The BIA further noted that 8 C.F.R. § 1003.15—the regulation setting forth the required information for a notice to appear—does not specify that the time and date of the initial hearing must be included in the document.[44] In fact, 8 C.F.R. § 1003.18 states that the notice need only contain the time, place, and date of the initial removal hearing "where practicable," and if that information is not contained in the notice, the immigration court is responsible for scheduling the initial removal hearing and providing this information to the government and the alien.[45] The BIA reasoned that terminating proceedings where service was proper under this regulation would require it to disregard a regulation that it is compelled to follow.[46]

---

[41] 8 C.F.R. § 1003.14(a).

[42] *Bermudez-Cota*, 27 I. & N. at 445.

[43] *Id.*

[44] *Id.*

[45] 8 C.F.R. § 1003.18(b).

[46] *Bermudez-Cota*, 27 I. & N. at 444 (citing *Matter of L-M-P-,* 27 I. & N. Dec. 265, 267 (BIA 2018) (affirming that neither the immigration judge nor the BIA may "disregard the regulations, which have the force and effect of law").

Finally, the BIA noted that before *Pereira*, the Fifth, Seventh, Eighth, and Ninth Circuits held that a notice to appear that failed to state the time and place of the initial removal hearing was not defective if a notice of hearing that contains this information is later sent to the alien.[47] The BIA therefore concluded that a two-step notice process is sufficient to meet the statutory notice requirements of § 1229(a)(1) of the INA. Because the respondent received proper notice of the time and place of his hearing when he received the notice of hearing, his notice to appear was not defective.[48]

The Sixth and Ninth Circuits have also rejected the argument that a deficient notice to appear under *Pereira* divests the immigration court of subject matter jurisdiction.[49] In reaching its decision, the Sixth Circuit looked to the BIA's decision in *Matter of Bermudez-Cota*.[50] The Sixth Circuit analyzed the BIA's interpretation of its own regulations under the *Auer* standard, which provides that agency interpretations of their own regulations are controlling unless they are plainly erroneous or inconsistent with the regulation.[51] The Sixth Circuit determined that the INA did not specify when or how jurisdiction vests with the immigration judge or which notice to appear requirements are jurisdictional.[52] Thus, the agency had some discretion in constructing its

---

[47] *Id*. at 445-46 (citations omitted).

[48] *Id*. at 447.

[49] *Hernandez-Perez*, 911 F.3d 305; *Karingithi*, 913 F.3d 1158; b*ut see Duran-Ortega v. U.S. Atty. General*, No. 18-14563 (11th Cir. 2018) (granting an emergency motion for stay of removal and declining to follow the BIA's decision in *Bermudez-Cota* because it was based on an unreasonable interpretation of the statutes and regulations involved).

[50] *Hernandez-Perez*, 911 F.3d at 312.

[51] *Id*. (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

[52] *Id*. at 313 (citing 8 U.S.C. § 1229a(a)(1) and § 1229(a)).

determination of it.[53]  The Sixth Circuit concluded that the BIA's finding that a two-step notice process was sufficient to meet the statutory notice requirements under § 1229(a) and was not inconsistent with the INA.[54]

The Sixth Circuit also analyzed the regulations, agreeing with the BIA that the regulations were ambiguous because they did not specify what information must be contained in a charging document at the time it is filed with the district court.[55]  The circuit also noted that the definition of "charging document" does not only include a notice to appear but also a "Notices of Referral to Immigration Judge" and a "Notice of Intention to Rescind and Request for Hearing by Alien."[56] And finally, the Sixth Circuit noted that the *Pereira* Court did not invalidate the petitioner's underlying removal proceedings, stating that "[i]f *Pereira*'s holding applied to jurisdiction, there also would not have been jurisdiction in *Pereira* itself.  But the Court took up, decided, and remanded *Pereira* without even hinting at the possibility of a jurisdictional flaw."[57]  Ultimately, the Sixth Circuit concluded "that jurisdiction vests with the immigration court where . . . the mandatory information about the time of the hearing, see 8 U.S.C. § 1229(a), is provided in a Notice of Hearing issued after the [notice to appear]."[58]

The Ninth Circuit subsequently ruled on the same issue.  It also found *Pereira*'s holding to be limited, stating that the Supreme Court "was not in any way concerned with the [i]mmigration

---

[53] *Id*.

[54] *Id*.

[55] *Id*. at 313-14.

[56] *Id*. at 313.

[57] *Id*. at 314.

[58] *Id*. at 315.

[c]ourt's jurisdiction" in that case.[59] Furthermore, in it is analysis of § 1229(a) and the regulations, the Ninth Circuit noted that unlike § 1229(a)(1), the regulations do not require a notice to appear to include the time and date information.[60] Instead, they only require the inclusion of this information "where practicable," and when that information is not contained in the notice to appear, the immigration court is required to later provide this information to the alien.[61] Significantly, the Ninth Circuit noted that § 1229(a) is silent regarding the immigration court's jurisdiction, and the regulations are silent as to § 1229(a)'s requirements for a notice to appear.[62] Because of the differences in the notice to appear requirements set forth in § 1229(a) and the regulations, and § 1229(a)'s silence as to jurisdiction, the Ninth Circuit concluded that the general presumption that the same word should be given the same meaning throughout a statute is inapplicable because the jurisdictional regulations not only do "not include the time of the hearing, reading such a requirement into the regulations would render meaningless their command that such information need only be included 'where practicable.' "[63] The court then held that "[t]he regulatory definition, not the one set forth in § 1229(a), governs the [i]mmigration [c]ourt's jurisdiction. A notice to appear need not include the time and date information to satisfy this

---

[59] *Karingithi*, 913 F.3d at 1159.

[60] *Id*. (citing 8 C.F.R. § 1003.15(b)).

[61] *Id*. at 160 (citing 8 C.F.R. § 1003.18(b)).

[62] *Id*.

[63] *Id*. (quoting 8 C.F.R. § 1003.18(b)).

standard."⁶⁴ The Ninth Circuit also found the BIA's opinion in *Bermudez-Cota* "easily meets" the deferential standard given to agencies in interpreting their own regulations.⁶⁵

This Court follows the Sixth and Ninth Circuits and gives the BIA's decision in *Bermudez-Cota* deference. The Supreme Court has held that "the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication."⁶⁶ When the BIA construes the INA, a reviewing court first asks "whether 'the statute is silent or ambiguous with respect to the specific issue' before it."⁶⁷ If the answer is yes, the court must then ask, "whether the agency's answer is based on a permissible construction of the statute."⁶⁸ An agency's construction of a statute is permissible unless it is "arbitrary, capricious, or manifestly contrary to the statute."⁶⁹ Furthermore, the Court is also required to give deference to the BIA's interpretation of its regulations. Under *Auer*, an agency's interpretation of its own regulations is "controlling unless 'plainly erroneous or inconsistent with the regulation.' "⁷⁰

The INA provides under 8 U.S.C. § 1229a(a)(1) that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deport ability of an alien." But neither this statute

---

⁶⁴ *Id*.

⁶⁵ *Id*. at 1161.

⁶⁶ *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (citation and internal quotation marks omitted).

⁶⁷ *Id*. at 424 (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837, 843 (1984)).

⁶⁸ *Id*.

⁶⁹ *Chevron*, 467 U.S. at 844.

⁷⁰ *Auer*, 519 U.S. at 461(citing *Roberston v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)); *Wei v. Mukasey*, 545 F.3d 1248, 1256 (10th Cir. 2008) (citations omitted) (stating that if the INA and regulations are ambiguous, the court must defer to the BIA's interpretation of its own laws).

nor § 1229(a) state when or how jurisdiction vests with the immigration judge. And although the regulations specify when jurisdiction vests with the immigration court, they do not specify what information a charging document must contain for that jurisdiction to vest. The Court therefore looks at whether the BIA's construction of § 1229(a) and the regulations as set forth in *Bermudez-Cota* is permissible.

As discussed above, the Court agrees with the BIA that *Pereira* is not applicable to the jurisdictional question at hand. The Court is also persuaded by the Ninth Circuit's analysis of the statute and regulations. Section 1229(a) is silent regarding jurisdiction, and the regulations are silent regarding § 1229(a)(1)'s notice to appear requirements. The regulations, not the statutory definition of a notice to appear, control when jurisdiction vests with the immigration court.[71] The Court therefore gives deference to the BIA's position in *Bermudez-Cota*.

The Court notes that although both the Sixth and Ninth Circuit gave the BIA's decision in *Bermudez-Cota* deference, there is a slight difference in their conclusions. The Sixth Circuit concluded that jurisdiction vests with the immigration court when the time and date information required by § 1229(a)(1) is provided in a notice of hearing issued after the notice to appear.[72] The Ninth Circuit, on the other hand, does not require the time and date information to be issued in a notice of hearing for jurisdiction to vest. It held that jurisdiction vests when a notice to appear that

---

[71] The statutory text of § 1229(a) also proves that *Pereira*'s holding does not affect the jurisdiction of the immigration courts. Section 1229(a)(1)(G) states that "written notice (*in this section* referred to as a 'notice to appear') shall be given . . . specifying, . . . [t]he time and place at which the proceedings will be held." (emphasis added). Thus, the statutory text appears to define "notice to appear" only for purposes of the statute, such as the stop-time rule in § 1229b(d)(1)(A). The statute does not address when jurisdiction is conferred on the immigration court. Thus, the Supreme Court's interpretation of § 1229(a) and the requirement for a "notice to appear" cannot be extended to modify the regulations governing the immigration court's jurisdiction. *See United States v. Romero-Caceres*, 2018 WL 6059381, at *7 (E.D. Va. 2018).

[72] *Hernandez-Perez*, 911 F.3d at 315.

meets the regulatory requirements of 8 C.F.R. § 1003.15 is filed with the immigration court.[73] This difference most likely stems from the BIA's language in *Matter of Bermudez-Cota*, where the BIA held that "a notice to appear that does not specify the time and place of an alien's removal hearing vests an [i]mmigration [j]udge with jurisdiction over the removal proceedings and meets the requirements of [§ 1229(a) of the INA], so long as a notice of hearing specifying this information is later sent to the alien."[74] After reviewing the BIA's decision, this Court is not convinced that the BIA intended for jurisdiction to turn on whether there is a later-issued notice informing the alien of the time and date of the hearing.[75] Rather, the BIA's reference to the later notice of hearing ensures that the requirements of 8 C.F.R. § 1003.18(b) and § 1229(a)(1) are met. Indeed, as a district court in the Northern District of California who also looked at this issue explained, if a notice of hearing was the document that vested the immigration court with jurisdiction and this document is typically served after the notice to appear, how would an immigration court that had only issued a notice to appear know if it had jurisdiction?[76] The Court therefore concludes that jurisdiction vests when a notice to appear that complies with 8 C.F.R. § 1003.15 is filed with the immigration court.[77]

---

[73] *Karingithi*, 913 F.3d at 1161.

[74] *Bermudez-Cota*, 27 I. & N. at 447.

[75] *See United States v. Arteaga-Centeno*, 2019 WL 428779, at *4 (N.D. Cal. 2019) (finding that neither *Bermudez-Cota* nor *Karingithi* held that the vesting of jurisdiction of the immigration judge turns on whether there is a later issued notice informing the alien of the time and date of the hearing).

[76] *Id*. at *4 n.2.

[77] Other courts within this district have held that a notice to appear that is deficient under *Pereira* does not divest the immigration court of subject matter jurisdiction, albeit for different reasons. *See Chavez*, 2018 WL 6079513, at *6; *United States v. Larios-Ajualat*, 2018 WL 5013522, at *6 n.4 (D. Kan. 2018); *United States v. Lira-Ramirez*, 2018 WL 5013523, at *6 n.4 (D. Kan. 2018).

In sum, the immigration court had jurisdiction to order Defendant's removal. The 2002 Notice filed with the immigration court complied with the requirements set forth in the regulations. Defendant subsequently received a notice of hearing informing him of the date and time of his hearing in accordance with 8 C.F.R. § 1003.15 and § 1229(a)(1). Indeed, Defendant appeared at the hearing and admitted to the allegations with counsel present. Accordingly, Defendant's argument that the 2002 deportation order is void fails.[78]

## C. Defendant's Collateral Attack of the Removal Order

Intertwined with his jurisdictional argument is Defendant's collateral attack under § 1326(d). As the Tenth Circuit has recognized, Congress has imposed specific limitations on an alien's right to collaterally attack an underlying deportation order on a charge of illegal reentry:

> To collaterally attack a deportation order, an alien must demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."[79]

These requirements are in the conjunctive, and a defendant must satisfy all three to prevail.[80]

Following *Pereira*, federal district courts are split regarding whether a defendant is required to comply with § 1326(d)'s requirements to collaterally attack a removal order when the notice to appear is defective. This split primarily turns on the issue of whether the deficient notice divested the court of subject matter jurisdiction. For example, courts that have applied *Pereira*

---

[78] A number of other federal district courts have concluded that the regulations, such as 8 C.F.R. §§ 1003.14, 1003.15, and 1003.18, not *Pereira* and § 1229(a)(1) govern when jurisdiction is conferred on the immigration court. *See United States v. Garcia*, 2019 WL 399612, at *4 (M.D. Fla. 2019) (compiling cases).

[79] *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005) (citing 8 U.S.C. § 1326(d)).

[80] *See United States v. Lopez-Collazo*, 824 F.3d 453, 458 (4th Cir. 2016).

broadly have held that that a defective notice divests the court of subject matter jurisdiction, is null and void, and cannot support a § 1326(a) prosecution for illegal reentry—relieving the defendant of the burden of meeting § 1326(d)'s requirements for a collateral attack of a removal order.[81] Other district courts—including those within this district—have concluded that a defective notice does not satisfy or eliminate the need to satisfy § 1326(d)'s requirements.[82] The Tenth Circuit has not addressed the issue. Given that this Court has held that a defective notice to appear does not divest the immigration court of subject matter jurisdiction, the Court will address whether Defendant has satisfied the requirements to collaterally attack the prior removal order under § 1326(d).

Defendant argues that he was not required to exhaust his administrative remedies because "exhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, . . . or *where the administrative proceedings themselves are void*." But the Court has already rejected Defendant's argument that the underlying removal proceedings were void, and Defendant does not otherwise argue that he exhausted his administrative remedies. Defendant therefore fails to show an essential element of collateral review under § 1326(d). This failure precludes a collateral challenge to the 2002 removal order.

---

[81] *See United States v. Ortiz*, 2018 WL 6012390, at *2-4 (D.N.D. 2018); *Pedroza-Rocha*, 2018 WL 6629649, at *5; *Virgen-Ponce*, 320 F. Supp. 3d at 1165-66.

[82] *See United States v. Hernandez-Aguilar*, 2019 WL 456172, at *1 (E.D.N.C. 2019); *Chavez*, 2018 WL 6079513, at *6; *Larios-Ajualat*, 2018 WL 5013522, at *4; *Lira-Ramirez*, 2018 WL 5013523, at *4.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Indictment (Doc. 11) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 6th day of March, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE